May it please the court, I'm David Pardini, and let there be no doubt about it, given some of the secondary issues in this case, that I'm here solely in my capacity as legal counsel for the appellants, specifically child Georgia Pardini, I'd like to reserve four minutes for rebuttal. As the court knows, this is the second appeal for this case. It was originally a case under the Individuals with Disabilities Education Act. And although the underlying legal issues have changed, the case is still generally about the same thing, which is essentially the Appellee Allegheny Intermediate unit's refusal to comply with the law. But what we're dealing with here is whether you can get an attorney's fee, right? Well that's one of the issues, yes, Your Honor. The other issue pertains to the Third Circuit's award of out-of-pocket expenses and costs in relation to compensatory education substitute services during the period of time in which the services were terminated. And, you know, basically the decision of the Third Circuit from August of 2005 in its entirety with respect to those two issues is, in my humble opinion, fairly clear. Well, as to attorney's fee, Woodside rules, right? And to overturn Woodside, this court would have to go and bank. And are you asking us to go and bank on this? Not presently, Your Honor, no. Okay, well then there is no attorney's fee for you as a parent. Well, Your Honor, Woodside was, I don't believe was designated as a precedential opinion. Woodside is in 248 Fed 3rd, 129. That is a precedential opinion. Well And we cannot, by our internal operating procedures, we cannot overrule that unless we go and bank. Well, I think the Woodside case is clearly distinguishable for a number of reasons, which Judge McKee, when he issued the Pardini 1 decision, as I'll refer to it as, you know Well, Judge McKee could not overrule Woodside without suggesting the case go and bank. Well, I mean, the Allegheny Intermediate Unit, you know, asked, petitioned back in, at the end of 2005 for hearing on bonk or unbank, and the petition was denied. So I'm not really sure how that would, you know, what the significance of that would be. Well, the significance of that is that Woodside is still this court's president. Well, my understanding was, as far as just fundamental jurisprudence, that if there, you know, if one precedent follows the other, the most recent precedent is the authoritative precedent. So you're saying, that would then say we can overrule without going and bank, but our internal operating procedures say we can't, say we can't. Well, Your Honor, again, this was, you know, on a case-by-case basis, I don't believe that, again, the Woodside case is distinguishable. How do you distinguish Woodside from this case? Well, Your Honor, in Woodside, the, there was an administrative process dispute under the IDEA, which the parent attorney and family was, you know, were the prevailing party at the end of those administrative proceedings. And at that point in time, the parent attorney made a request for his fees incurred for those administrative proceedings and, in fact, filed the lawsuit at the district court level. And the entire premise of the lawsuit was the attorney's fees. And the attorney's fees. And what is your request for attorney's fees for? My request for the attorney's fees, pursuant to the award that Judge McKee had issued, was, you know, for the litigation and the merits of the Pardini-Wong decision, which was related to the pendency provisions. It was in question of. But my specific, Mr. Pardini, my specific question is, is your request for attorney's fees, which you made to the district court and which is on appeal here, is it limited to attorney's fees for the litigation in Pardini-Wong? Yeah, essentially. I mean, I do believe my statement included fees at the administrative level. But, again, the lawsuit that I had initially filed on behalf of my daughter and my family, you know, I did not explicitly request the attorney's fees. I asked for, you know, any other relief that the court would deem fitting and proper. And Judge McKee, in specific reliance on that language, awarded the attorney's fees. I mean, he was explicit in that award. And, you know, based on that award is. He couldn't explicitly award attorney's fees. Now, I know as a judge, sometimes I have put things in footnotes that I haven't thought about a great deal. And someone else has pointed out to me, you can't do that because there's another case that holds the opposite. Unfortunately, I guess Judge McKee's footnote was not read. But that does not mean that Woodside is not the precedent of this court. Well, Judge McKee actually was on the Woodside panel also. So I would think that he was aware of the Woodside case. Not necessarily. In either case, the Zucker opinion that he did rely on was issued after the Woodside case allowed, you know, embraced the fee shifting provisions and allowed for the fees. Not in IDEA cases. Well, again, it followed the Woodside case. And the Pardini 1 decision followed the Woodside case. And I would submit that Judge McKee addressed this issue throughout the opinion, not just in a couple footnotes, but in his holding as well. And the issue was, again, appealed by the intermediate unit for en banc hearing and denied. It was then appealed on, you know, for cert to the U.S. Supreme Court and likewise denied. So I'm not, you know, I don't know, I'm not sure if I understand or agree that Judge McKee, you know, distinguished the Woodside case and set a new precedent essentially. Well, he can't set a new precedent unless we go en banc. My understanding is that the other costs have been settled by consent decree. Well, no, Your Honor, that would be incorrect. With all due respect, the Judge McKee's order, again, was unequivocal in the award of any and all out-of-pocket expenses as would be consistent with the facts of the case whereby all of the services, not just the conductive education services that were terminated. Again, all of the services were terminated. And, you know, basically the award that Judge McKee gave included any and all out-of-pocket expenses. There was language that also said he was awarding the conductive education costs. And, again, that language was viewed, you know, under a microscope essentially. And Judge, the district court judges in the Allegheny Intermediate Unit argued that that was the only, those were the only costs that were awarded. But that, again, I submit is not consistent with the entirety of the opinion. And I would also point out with respect to the precedent applicable to the pendency provisions, to say that we're only entitled to the conductive education costs is tantamount to a repudiation of that entire pendency precedent. Because it basically says to the Allegheny Intermediate Unit that, you know, you can terminate all the services with impunity and all you're ever going to have to compensate the family for is going to be the services that there was a dispute over. What was settled by the consent decree? The dissent decree settled the conductive education costs and the litigation costs, and that is it, Your Honor. And I have a copy of the consent order. I mean, that's explicit. What else is there besides conductive education costs? Well, there was physical therapy costs that were two sessions a week for the same period of time. There was occupational therapy, one session a week for the same period of time. There were our supplemental services that we sought out of our own volition and that Judge McKee took specific notice of with respect to a couple trips to Poland for physical therapy, trips to the Cleveland Clinic for physical therapy, and, you know, any and all of the out-of-pocket expenses related to those services as well. So there are and were other compensatory education costs at issue, and essentially the district court ignored that, as did the Allegheny Intermediate Unit, and again— How much is involved in those costs? Well, Your Honor, I wasn't permitted any discovery by the district court, but my understanding is that it would be—the conductive education services were three times a week, so I'm going to, you know, infer or make a leap of faith. I mean, those totals were around anywhere from—around $12,000, so I would think it's about the same for the other costs. You know, when I read Judge McKee's footnote, it said we—it was like we don't see any reason why. And, you know, I've written opinions like that myself, in which I don't intend—in fact, I just finished one, which I said, you know, it looks like the district court was wrong on something, but ultimately we don't reach it because its conclusion was right, so we don't have to say, you know, something. But I wondered whether he was definitively deciding it, because I can tell you there are cases that say that if a second case is inconsistent with the first, you've got to follow the first. And I was a state judge in New Jersey on the appellate court. It didn't go that way there, but we didn't have the same IOP, so I can tell you there are cases. But I just wondered if he really intended—because he didn't really say—he didn't say that he can. He said we don't see any reason why he can't. Well, there was a reason he didn't say it. Well, Your Honor, I think he was very clear, and in fact that his intentions were explicit, given the fact, again, that when I filed the initial complaint, you know, I had—you know, I didn't do this for the attorney's fees, Your Honor. Of course. I did it because it was the right thing to do. And Judge McKee, you know, he had to find a way, essentially, Your Honor, in that language, in the original complaint, to open the door for himself to award those attorney's fees. But he couldn't do that. But he did, Your Honor. Well, but he couldn't. He couldn't. You know, and you aren't going to persuade. I think one of the reasons why we should be careful about parents who are attorneys representing clients in these cases is that they don't step back and look at things impersonally. And having said that, that's all I'm going to—I don't see that we need to talk further about this. Well— Mr. Fargani, we'll have you back on rebuttal. You have four minutes on rebuttal. Thank you. Thank you. Ms. Lane. May it please the Court, I'm Christina Lane on behalf of the Allegheny Intermediate Unit. The issue before you here today is that the lower court certainly did follow the opinion of the Third Circuit as well as its mandate. But what the opinion had and why we're here again before you is that there was a footnote. And a footnote in which Judge McKee puts out his opinion that he sees no reason why we do not think Mr. Pardini is precluded from recovering reasonable attorney fees otherwise provided under the IDEA because he is seeking reimbursement for his own expenses while representing his daughter. In that footnote, Judge McKee references Zucker. And Judge McKee sat on both of those panels. What the problem is in his reference and citation to the Zucker versus Westinghouse, it's incorrectly quoted. He quotes it as though this court gave the pro se attorney in the shareholder derivative action attorney's fees when Zucker specifically held no attorney's fees in that action for pro se. Well, it's Woodside that bears on this case, isn't it, rather than Zucker? Certainly. Woodside is very clear. So we don't need to worry about Zucker. Let me ask you about Woodside a second. Yes, Your Honor. But wasn't the Woodside case a case in which Mr. Woodside was seeking attorney's fees for representation before the administrative agency? And isn't that what Woodside decided that under the IDEA you couldn't get attorney's fees for your litigation on behalf of your own child in front of the administrative agency? Your Honor, the Woodside decision factually did involve a parent attorney of a disabled child who brought through an administrative procedure challenging the IEP. But Woodside itself does not limit its holding to only administrative actions. And if you look at the fee-shifting statute itself in IDEA at section 1415, it specifically references any proceeding under this act. And all fee-shifting statutes are to be handled under the same standards. And so that way we look at K, which is the K v. Erler case, which is the United States Supreme Court, in which the Supreme Court states that fee-shifting statutes, the purpose for them, the public policy for them, is that we want individuals who want to vindicate their civil rights to be able to go out and seek competent, disinterested counsel. And so K did involve a pro se attorney, and it dealt with a pro se situation. Here before you, we have Mr. Pardini, who is an attorney parent representing his daughter. And in the Woodside decision... No, it does not specifically reference that, Your Honor. And isn't that what Judge McKee was referencing in Zucker, that unless Congress says specifically that you aren't necessarily barred from recovery? Actually, the quote in Pardini that Judge McKee states is, we recognize that absent an expression of congressional intent to the contrary, a plaintiff's entitlement to attorney's fees is not eliminated merely because he, she was pro se counsel. That's in Pardini in the footnote. But when he referenced and cited Zucker, the actual language in Zucker is, absent a congressional directive that pro se attorneys should be able to recover attorney's fees and derivative actions, we find no basis to create a new exception. So not only was the reference to Zucker incorrect, but then we have the inexplicable decision not even discussing Woodside, which is precedential on this court, which specifically dealt with an IDEA proceeding and an attorney parent, and specifically held no fees in that situation. Why did it hold that way? Because it goes back to the public policy and the incentive for disinterested counsel. In Woodside, there's the discussion about emotional attorneys being involved in representing their child and not being able to step back from the proceeding. And it is in that recognition of that why this court followed Kay and followed the Fourth Circuit's decision in Doe that they want to have reason rather than emotion in these cases involving civil rights actions. And that the whole policy is to seek independent counsel. Is the footnote that's in question here from the Pardini 1 case, is it dicta or is it part of the mandate? It's dicta, Your Honor. It's within the opinion. It's the footnote 4, pages 5 through 6. Well, wouldn't the correct result here be to say, look, the district court may very well have deviated from the mandate and that's reversible. But once the appeal was taken, we can determine the case. And even though that court shouldn't have ruled out attorney's fees, we can. In other words, I personally think that maybe the district court should have said, somebody doesn't like this, they can appeal. But there's case after case that says you've got to do what the mandate tells you, even if you think it's wrong. Then, okay, so they allow the fees. Then there's an appeal by the unit. And then this court can say, well, that rule doesn't apply to us because if that case was wrong, we have to go back to the original Woodside rule. Your Honor, I would agree with you that when this court issues a mandate that is without question telling the lower court what to do, the lower court and Magistrate Hay as well as then district court Just Hardiman, who is now here on the Court of Appeals, specifically said they know and recognize their duty to follow the mandate. But there wasn't a clear, unequivocal mandate set down. So you think that maybe there's a little ambiguity because it did say any fees. And he did say, we don't see a reason. So you can say, well, you couldn't really say he didn't follow it because it didn't clearly tell him what to do. Your Honor, the footnotes spoke about not seeing any reason for Mr. Pardini not to receive the fees. The remand in the conclusion of the opinion, it states, for the court to determine the amount of reimbursement the Pardinis are entitled to as well as the amount of any attorney's fees, and that's assuming, again, that they're the prevailing party. And I think that any is the operative word, which Magistrate Hay specifically ruled in her decision, that that then is not a direction of this court. It's a mandate sending back to the lower court, which they there have the authority to decide that issue. How about the other issue he raises? I frankly focus more on the attorney's fees aspect. But the other issue is an issue. What do you say about that? The other issue I raised is that if this court wanted to determine that Wood's site was not precedential. No, forget Wood's site. No, no, on the consent decree and the other clause. I'm talking about the other clause. Oh, excuse me. The consent decree we entered into very clearly disposed of all other issues, and the only issue withheld from that consent decree was the attorney's fees because at the timing of the consent decree, Magistrate Hay had already issued her report and recommendation. And we had a conference call in which she put both parties on issue that she felt she was bound by Wood's site. So the consent decree wraps up everything but the attorney's fees, notwithstanding the argument he made today? That's correct, Your Honor. And then the attorney's fees is really the only open issue you see in this case. Yes, Your Honor. That is the only issue involving any cost is the only reservation within that consent order was the attorney's fees. What about the trip to Poland and the physical therapy and those other issues? Are they clearly covered by the consent decree? Yes, Your Honor. The other issues we had before us, and there is within the record, there was a motions in limine where Mr. Pardini wanted to have the individual family service plan that the AIU wanted to present as to what was the stay put, what were the services in place at the time that they were terminated, and that's what he should be reimbursed for, what was in the IFSP. Mr. Pardini challenged that saying, no, he's not bound by the IFSP, but that's in fact what he was here on Pardini 1 saying that's what he wanted. I want stay put. I want pendency. I want what's in the IFSP services. Trips to Poland were never in the IFSP, and in fact, before Mr. Pardini even had an IFSP in place, he on his own was taking his daughter to trips to Poland. That is something extra that he did on behalf of his daughter, certainly was never part of a program under IDEA, and so that is part of the reason we wanted the IFSP, but we never got there because once the court ruled that how it was going to decide on attorney's fees, we had a conference call, and we're trying to can we reach resolution on the other issues, which were the costs. During that, Mr. Pardini represented to the court his costs at $25,000, and the consent decree settled at 20 on all issues. Talk a little bit about whether or not you think that Mr. Pardini was in fact or that his clients was in fact the prevailing party. Your Honor, I raise that issue in the exercise of caution that this court may rule that Woodside would not be precedential in this action. This court has two cases that it has decided that when you seek stay put, it is an injunctive relief that under IDEA, that's not a change in circumstances in which you then become prevailing party. Those cases in which this court has ruled that is prior to the Buckhannon ruling, J.O. versus Orange Township Board of Education, in which it was held in 2002 by this court, that a stay put order did not obtain prevailing party status. And then following Buckhannon, there was the J.L. decision in which this court said, Buckhannon applies to IDEA proceedings, and therefore there must be that change in relationship, the judicial imprimatur to it, in order for there to extend a prevailing party status. In J.L., J.L. was suing under IDEA, and they had obtained an injunctive relief, they had obtained a content order, and outside of court had agreed to some amendment within the IEP. The court held that that preliminary injunctive relief did not equate and accord prevailing party status, and denied that prevailing party attorney's case. Here, the underlying action, as Mr. Pardini has referred to it as Pardini 1, was specifically about stay put. And that, under this court's prior rulings, does not then accord him prevailing party status. I would just like to sum up that. Sure, if you have anything else. That just that this court's Woodside, I feel, is very precedential, and that that should follow within that. Thank you. All right. Well, Ms. Lane, thank you very much. And Mr. Pardini, do you have any additional rebuttal? I mean, first off, I guess I think it's fairly obvious that we were the prevailing party after having Judge McKee, having rendered the decision that he did. But, you know, getting back to Woodside, I guess, you know, and I guess I maybe need to take a closer look at the site, but my understanding was that that decision, which was a very short decision authored by a visiting district court judge... That doesn't make it any less precedential. Well, I wasn't aware that it had been designated as a precedent, but I... It was in the federal reporter. It was automatically, at that time, we used to put the only opinions that got in there were precedential. It's per se precedential. Well, even if that may be the case, Your Honor, I'm not certain that it was, that there was a petition or that there was a hearing on Bonk that it was taken and affirmed by the full panel of the Third Circuit. That wouldn't matter because an opinion by the panel, just the three-judge panel, is as binding on a subsequent panel as an in Bonk opinion is. And the subsequent panel has to follow either. The difference is at the other end. On the other end, an opinion by a, whether it's in Bonk or by a three-judge panel, can be overruled by an in Bonk panel. That's on the back end of the two times. So it doesn't matter. From Judge Roth's statements earlier, I thought it was a significant factor whether it was on Bonk or not on Bonk. Well, that would be true now. If the court went on Bonk now, it could disregard Woodside. Well, irrespective of the court's administrative internal operating procedures, the Part 81 decision is an authoritative decision. It's a matter of law. And again, I mean, there was an appeal by the intermediate unit for on Bonk hearing. Well, that would have been merely a petition for rehearing in Bonk. And they raised the issue. They raised Woodside. They raised, they didn't say it was ambiguous, but they raised the issue. And the full panel wasn't interested in hearing the matter, and neither was the U.S. Supreme Court. So I'm not, you know, again, I think that the Part 81 decision controls, not the Woodside case, the previous Woodside case. You know, when I read that, I was interested in denying, in the denial of rehearing, because the Supreme Court takes the position that a denial of certiorari means nothing. It doesn't mean that it proves it's an opinion. It doesn't mean anything. And I just wondered, because I don't know that we've ever expressed a view on whether or not the denial of a petition. Now, a petition for rehearing in Bonk automatically includes a petition for panel rehearing. So actually, I don't know, I didn't get the petition out, but I understand it. That petition must have been for both. And the panel denied rehearing, too, apparently. And, Your Honor, in both of those petitions by the Allegheny Intermediate Unit, they don't raise, you know, they challenge the award of the attorney's fees. And basically, when they're rejected twice, and then when a case gets remanded, they're taking essentially a third bite of the apple. And lo and behold, as was typically the case, the district court obliged. But again, you know, getting beyond even, I guess, the question of, were the fees awarded versus was it proper to award them? Because obviously my position initially was that they were awarded, and that was the end of the question. But if I could just wrap up real quick. You can, but I'm directing your attention to the red light. I mean, on a case-by-case basis, there's not one modicum of support in the record that at any point in time, I was a subjective, emotional, you know, parent who wasn't disinterested enough to, you know, effectively represent my family's interests. I won the case. I set a precedent. I think it's rather ironic that, in hindsight, my qualifications are being called into question. And one last comment, I guess, or two last comments, as far as the dicta is concerned, there's no case law. There's no support for any argument that just merely because language is included in a footnote that that makes it dicta. Judge McKee was, you know, he addressed these issues. They were integral and subsumed within the entirety of his opinion to suggest that their dicta is not fair. And finally, on the consent decree, I'll, you know, I'm sure it's a matter of record, but just for clarity and for today's purposes, the only paragraph that matters was Paragraph 6, and it says that this is, quote, for full and final resolution of said issue of reimbursement for conductive education costs and litigation costs and expenses exclusive of any attorney's fees to date. It doesn't say that it's resolving other compensatory education cost issues. It just says it's restricted to the conductive education, and that's how it reads on its face. To suggest that we would have waived all our other claims I don't think is fair, given the language of the consent agreement. Thank you. Thank you very much for your efforts. Thank both counsel for helpful arguments, and we'll take the matter under advisement.